## ANDERSON *v.* WARTENBERG.

JUSTICES OF THE PEACE—APPEAL FROM JUSTICE'S COURT—TIME—
STATUTES.

A special appeal from a justice of the peace of the city of Detroit to the circuit court of Wayne county in garnishment proceedings is not authorized under section 22, Act No. 475, Local Acts 1903, providing that appeals from such court may be authorized by the circuit court of Wayne county when the party appealing has been prevented from making a defense upon the merits of the case by circumstances not under his control, and also when justice requires that such appeal be authorized, but that no appeal shall be allowed or authorized after five days from the rendition of judgment, except as therein otherwise provided, where principal and garnishment actions were begun before a justice of the peace of the city of Detroit, and, upon return day the garnishee disclosed an indebtedness to the defendant exceeding the amount of plaintiff's claim, but no service was had upon the nonresident defendant, and plaintiff's attorneys thereupon notified defendant by letter of such actions and of the garnishment and that judgment would be taken for the amount of the claim and costs unless the defendant was heard from on or before the return day, to which defendant's attorney replied by letter asking for information of date of return day and offering a settlement, but no answer was made to the letter of defendant's attorney, by plaintiff's attorneys and defendant's attorney wrote them again without reply and also the garnishee, whose attorney informed defendant's attorney that judgment had been regularly taken in the actions, and defendant took no further action until more than five days after the actions had regularly proceeded to judgment, when he applied for, and was allowed leave to perfect, a special appeal, which he perfected accordingly.

Error to Wayne; Knowlen, J., presiding. Sub-

mitted April 5, 1917. (Docket No. 41.) Decided May 31, 1917.

Garnishment proceedings in justice's court by Mary Anderson against Margaret Marsh as garnishee of Charles W. L. Wartenburg. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Reversed.

*McPherson, Dunn & Mann,* for appellant.

*A. Elwood Snow,* for appellee.

Plaintiff, a resident of Detroit, claims to have negotiated the sale of two lots for defendant, a resident of Saginaw, at a price of $2,800. On April 19, 1916, defendant came to the city of Detroit, where the transaction was completed. The purchaser of said lots, Margaret Marsh, paid said consideration with a certified check for $2,653.91 and an uncertified check for $146.09. Immediately after the conclusion of the transaction, plaintiff demanded compensation for her services as agent in the sum of $140 (being 5 per cent. of the purchase price. Defendant offered $25 in payment of her said claim and, that being refused, paid nothing. Defendant immediately went back to Saginaw. Plaintiff thereupon on the same day started suit in the justice's court for the city of Detroit, returnable April 25th, and on the same day a garnishment suit was started against Margaret Marsh as garnishee, returnable on April 25th. On the return day of the summons in the principal suit, the same was returned "not served" and an alias summons issued returnable May 1, 1916. The garnishment summons was duly served, and on the return day the garnishee defendant, Margaret Marsh, disclosed an indebtedness to the principal defendant in the sum of $146.09. On April 25,

1916, which was the return day of the summons, Mc-Pherson, Dunn & Mann wrote the following letter to the defendant:

"April 25, 1916.

"MR. CHARLES W. L. WARTENBERG,
   "Saginaw, Mich.
   "*Dear Sir:* This is to advise you that in behalf of our client, Mary Anderson, we have begun suit against you for the recovery of commissions for the sale of real estate belonging to you on Newport avenue of this city. We have successfully garnisheed Margaret Marsh in this proceeding. The value of the property sold we are informed is $2,800.00, and we shall hold you to your memorandum to pay the usual five per cent. of this amount. Unless we hear from you on or before the return day in this suit, we shall be obliged to take judgment against you in the amount of $140.00 and costs.

"Very truly yours,
"MCPHERSON, DUNN & MANN."

This letter was handed by the defendant to his counsel, A. Elwood Snow, for attention, who on the 3d day of May wrote plaintiff's lawyers as follows:

"SAGINAW, MICH., 5/3/16.

"MESSRS. MCPHERSON, DUNN & MANN,
   "Penobscot Building,
      "Detroit, Mich.
   "*Gentlemen:* Your favor of April 25, 1916, addressed to Mr. Charles W. L. Wartenberg, has been referred to me for reply.

"You state in your letter that Mr. Wartenberg must settle before the return day of the suit you have instituted against him, but you do not give him the date of the return day, nor do you say before whom the suit is pending. I would be obliged to you if you would give us that information.

"Mrs. Anderson told Mr. Wartenberg that she would accept the sum of $50.00 for bringing the parties together, but before he had a chance to send her that amount or refuse to pay her that sum, she commenced suit as we understand.

"Mr. Wartenberg denies any liability to Mrs. An-

derson in the sale of that property, but is willing to adjust the same and avoid litigation, and is willing to give her the sum of $50.00 for that purpose, but if she is not willing to accept that sum in full, he will stand her a suit.

"Please let me hear from you by return mail.
"Respectfully yours,
"A. Elwood Snow."

Receiving no answer to said communication, a second letter was written by Snow to plaintiff's lawyers on June 13, 1916, which follows:

"Saginaw, Mich., June 13, 1916.
"McPherson, Dunn & Mann,
"Penobscot Building,
"Detroit, Mich.
"*Gentlemen:* On May third I wrote you in regard to the matter of claim of Mrs. Anderson against Mr. Wartenberg of this city, and have received no reply from you.

"Kindly refer to such letter and make reply.
"Respectfully yours,
"A. Elwood Snow."

No reply having been received by Mr. Snow to this last communication, he wrote the following letter to Mrs. Margaret Marsh, the garnishee defendant, to whom the principal defendant had sold the lots:

"Saginaw, Mich., June 26, 1916.
"Mrs. Margaret Marsh,
"Grosse Pointe Farms,
"Wayne County, Mich.
"*Dear Madam:* On April 19, 1916, Mr. Charles W. L. Wartenberg of this city sold you a lot in the city of Detroit and on that date you gave him a check in the sum of $146.09 as a balance due on said purchase. A little later you notified him that you had been garnisheed in a suit commenced against him by a Mrs. Anderson and that you had stopped payment on said check. This check has not been paid and I now have possession of same for Mr. Wartenberg, and request that you either redeem this check or inform us of the name of the justice or other officer that issued the

garnishee summons served on you, and his address, and the date of same and the names of the parties, so to enable us to defend that case or have same dismissed.

"It would be much more satisfactory if you would send me the summons or a copy of same.

"Trusting that you will attend to this by return mail so that this matter can be disposed of at once, I beg leave to remain,

"Respectfully yours,
"A. ELWOOD SNOW."

Mrs. Marsh took this letter to her attorney, Mr. H. H. Emmons, who wrote the following letter to Mr. Snow on July 8, 1916:

"DETROIT, MICH., July 8, 1916.
"A. ELWOOD SNOW,
"Attorney and Counselor,
"Merrill Building,
"Saginaw, Mich.

*"Dear Sir:* Mrs. Margaret Marsh has turned over to me your letter of June 28th, in which you request information regarding the case of Mary Anderson *v.* Charles W. L. Wartenberg, in which Mrs. Marsh was the garnishee defendant. This suit was started on the 19th day of April, 1916, in the justices' court for the city of Detroit, before Fred E. DeGaw, justice of the peace, the number of the principal case being 89733 and the garnishee case 89734. In the garnishee case Mrs. Marsh disclosed the amount of her indebtedness to Mr. Wartenberg, namely, $146.09. As no service was obtained upon the defendant in the principal case, it was regularly continued under the statute in attachment and simultaneous garnishment, the new garnishment case being No. 90033. Judgment was regularly taken against the principal defendant for $140.25 and $3.00 costs on June 10, 1916, and an order to show cause was taken out against the garnishee defendant, and judgment was taken against her for $143.25 and $2.00 costs on June 26, 1916. You will note that there is a balance due Mr. Wartenberg from Mrs. Marsh of 84 cents. I shall instruct Mrs. Marsh to send this money to you on first opportunity.

"I have taken this matter up with McPherson, Dunn & Mann, the attorneys for Mrs. Anderson, and I was shown a copy of their letter to Mr. Wartenberg of April 25, 1916, in which he was given notice of the institution of the suit and of the fact that Mrs. Marsh had been garnisheed. Therefore, Mr. Wartenberg apparently had ample notice of same, and apparently has waited until too late a day for any defense, the proper proceedings having been taken by the continuance in attachment and simultaneous garnishment in the absence of personal service upon the defendant, and this was followed by regular judgments against the principal defendant and against the garnishee defendant.

"Very truly yours,
"H. H. EMMONS."

In the meantime, the alias summons in the principal case having been returned unserved on May 1, 1916, and the defendant having entered no appearance, plaintiff, under section 12, chap. 67, of Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 14189), continued the case in attachment by filing the necessary affidavit and bond; the return day of the attachment being May 10, 1916. On May 6th, the garnishment lien in the attachment suit was returned served, and on May 9th the garnishee defendant filed an answer under oath, disclosing an indebtedness to the principal defendant of $146.09, and on May 10, 1916, the return day of the attachment suit, the lien of attachment was returned "not served" on the defendant and no goods and chattels seized, but the return showed that the attachment writ was served on Margaret Marsh, garnishee, whereupon, in accordance with chapter 75 of Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 14346), the attachment suit was adjourned one month to June 10, 1916. On the adjourned day plaintiff was in court and the defendant did not appear, whereupon the justice, after the plaintiff was sworn, rendered a judgment for $140.25 damages, and $3 costs. On June 20, 1916, a summons to show cause

was issued against Margaret Marsh, garnishee de-
fendant, returnable June 26, 1916, and duly served on
June 24th. On June 26th, the return day, the defend-
ant did not appear. John G. Dunn was called on
behalf of the plaintiff. The affidavit of garnishment
and disclosure were offered in evidence, and judgment
was rendered against Margaret Marsh for $143.25 and
$2 costs. On July 18th, the garnishee defendant paid
said sum into court, and on the same day said
sum was turned over to the plaintiff and satisfaction
of judgment and costs entered on the justice's docket,
both in the principal case and in the garnishee case.
On July 21, 1916, defendant filed an application in the
Wayne circuit court for leave to perfect a special ap-
peal from the judgment rendered on June 10, 1916, on
the ground that he had been prevented from making
an appeal within five days because of circumstances
beyond his control, alleging the fact that no summons
or other paper was served on him, and that McPher-
son, Dunn & Mann had not replied to the letters of A.
E. Snow, his attorney. Plaintiff filed an answer to
this application and moved to dismiss same, and a
hearing was had on July 29, 1916, after which hearing
an order was entered by Judge Codd of the Wayne cir-
cuit court allowing the defendant to bring a special
appeal. Defendant perfected his appeal, and the re-
turn was filed in the circuit court on August 26, 1916.
On September 2, 1916, plaintiff filed a motion to set
aside the order entered on July 29th, allowing said
appeal, to which defendant in answer thereto filed a
motion to dismiss plaintiff's motion. A hearing was
had thereon on September 19, 1916, and after hearing
an order was entered by Judge Codd dismissing plain-
tiff's motion. The appeal case was thereafter imme-
diately brought on for hearing in the circuit court.
There the plaintiff refused to recognize the jurisdic-
tion of the circuit court and took an exception to the

ruling of the trial judge who had allowed the special appeal, objected to any further proceedings in the circuit court, refused to put in any testimony, and rested her case upon the record as it then stood. Thereupon, the circuit judge, upon motion of defendant, entered a judgment of nonsuit against plaintiff, to which action an exception was duly taken.

Plaintiff brings the case to this court for review, raising but one question, namely: Was the circuit judge in error in allowing the special appeal?

BROOKE, J. (*after stating the facts*). The applicable law relative to appeals from justices' courts of the city of Detroit follows:

"*Third.* Appeals may be authorized by the circuit court of the county of Wayne, when the party making the appeal has been prevented from making a defense upon the merits of the case in which such appeal is taken by circumstances not under his control; and such appeal may also be authorized when justice requires that such appeal should be authorized, and in all cases where the parties against whom such appeal is sought has appeared in said justices' courts by an attorney or agent, it will be sufficient to serve such attorney or agent with the notices of all subsequent proceedings in such case and all orders made therein by said circuit court may be served on said attorney or agent, and such service shall have the same effect as though made on the party against whom such appeal is taken.

"*Fourth.* Under absolutely no circumstances shall any appeal be allowed or authorized after five days from the rendition of judgment, except as herein otherwise provided." Section 22 of Act No. 475, Local Acts 1903.

The general statute covering appeals from justices' courts will be found in chapter 78, § 8, of Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 14408), as follows:

"Appeals may be authorized by the circuit court, or

by the circuit judge at chambers, after the expiration of five days, when the party making the appeal has been prevented from taking the same by circumstances not under his control."

This is but a re-enactment of section 909, 1 Comp. Laws 1897. We are of opinion that the provision for appeals in the general act of 1915 did not supersede the provisions of the local act of 1903 which applied to the city of Detroit only, and that the propriety of the order here questioned must be determined by a consideration of the provisions of the local act. That act has been before this court for consideration several times. *Goldhamer* v. *Wayne Circuit Judge*, 107 Mich. 259 (65 N. W. 97); *Stock* v. *Wayne Circuit Judge*, 143 Mich. 339 (106 N. W. 897); *Huddleston* v. *Amos & Co.*, 180 Mich. 253 (146 N. W. 658). From these decisions it is apparent that the circuit court is not clothed with discretionary power with respect to granting dilatory appeals, and that no appeal may be allowed after five days unless the showing required by section 8, chap. 78, of Act No. 314, is made. This brings us to a consideration of the petition filed by the defendant for leave to perfect a delayed appeal. In said petition defendant sets out the fact that he received the letter of April 25, 1916, written by McPherson, Dunn & Mann, that he turned the same over to his attorney, Mr. Snow, for attention, that he was never served with any summons or other paper notifying him of the commencement of suit against him by the plaintiff, and that it was not until the 17th of July, 1916, that he was informed by his attorney that a judgment had been taken against him, and further:

"Petitioner further represents that he did not know of said judgment or in what court same was obtained or the return day of the case until after the expiration of five days from the date of said judgment, and that he never had an opportunity to defend same

or appear in said cause and court, and that the statutes of this State were not complied with in making service, as no service of any paper was made upon him, and that such judgment is void and of no force and effect."

This application was supported by his own affidavit setting out the correspondence of Mr. Snow with McPherson, Dunn & Mann and with Margaret Marsh, as well as the reply of Mr. Emmons to the Marsh letter. The application was accompanied by no affidavit of merits.

The only question for determination is whether the showing made by the defendant was such as to warrant the court in granting leave to perfect a delayed appeal upon the ground that the defendant had been prevented from making a defense upon the merits of the case or had been prevented from taking an appeal within five days from the entry of judgment by circumstances not under his control. We feel constrained to say that the showing made by the defendant was insufficient under the authorities. Through his counsel, he claims to have been deceived both by the action and the nonaction of the plaintiff's attorneys. Their action in writing the letter of April 25th induced him to believe that the matter was open for adjustment, and their nonaction in replying to Mr. Snow's letters led him to believe that the case was being continued for the purpose of considering his offer of adjustment. We are of opinion that a just conception of professional courtesy would have impelled plaintiff's attorneys to promptly reply to Mr. Snow's letters. We are unable to reach the conclusion that their failure to reply was an excuse for defendant's inaction. Indeed, that very failure should have been accepted by the defendant as a warning. All the circumstances surrounding the transaction were such as to put the defendant upon notice. He had had

a difference on April 19th with the plaintiff upon the subject of her commission, and he held an uncertified check of Margaret Marsh's for $146.09 upon which payment was immediately stopped. This fact alone was sufficient to put plaintiff upon inquiry, yet he held that check from April 19th to June 26th, upwards of two months, before making inquiries from the drawer of the check. He had notice on April 25th of the commencement of suit and the institution of garnishment proceedings. Final judgment in the attachment case was not rendered until June 10, 1916, some 40 days later. No legal duty rested upon plaintiff's attorneys to notify defendant of the institution of said proceedings. They appear to have proceeded in strict accordance with the statute providing for attachment proceedings. That the defendant chose to rely upon what he considered to be negotiations for an adjustment with plaintiff's attorneys, rather than to protect his rights through an appearance and defense in the case or an appeal within five days after judgment, is unfortunate, but in our opinion insufficient, under the authorities cited, to warrant granting a delayed appeal.

The judgment will be reversed, and the order granting the special appeal will be vacated and set aside.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.