## LENT *v.* DICKINSON.

Appeal and Error—Circuit Court Commissioner—Delayed Appeal —Equally Divided Court.

Order allowing delayed appeal from judgment by circuit court commissioner forfeiting land contract is affirmed by an equally divided court (CL 1948, §§ 678.2a, 678.8).

Appeal from Livingston; Lyons (Willis L.), J. Submitted April 3, 1951. (Docket No. 12, Calendar No. 44,969.) Decided September 5, 1951.

Summary proceedings by Charles A. Lent against Clara Dickinson to recover possession of land. On delayed appeal to circuit court, judgment for defendant on one contract and for plaintiff on the other. Plaintiff appeals. Erna Lent, executrix of the estate of Charles A. Lent, deceased, substituted as party plaintiff. Affirmed by an equally divided court.

*Stanley Berriman,* for plaintiff.

*Hulett & Pheney,* for defendant.

SHARPE, J. *(for affirmance).* This case involves the forfeiture of 2 land contracts dated April 15, 1946. On the above date Charles A. Lent, as vendor, and Clara Dickinson, as vendee, entered into 2 executory land contracts for the sale and purchase of approximately 83 acres of land. The purchase price of one parcel of land containing approximately 40 acres was $18,000, with a down payment of $3,000 and the balance payable at the rate of $150 per month with interest at the rate of 5% per annum. The other contract relating to the 43-acre tract of land was for $6,000 with $1,000 paid upon the execution of the contract and the balance due in monthly instalments of $50, with interest at the rate of 5% per annum. Both contracts provided for interest at the rate of 7% per annum if the purchaser is in default on her payments.

Defendant, Clara Dickinson, having failed to keep her payments up to date, the plaintiff, Charles A. Lent, on February 15, 1949, filed a complaint for summary proceedings before the circuit court commissioner for possession of the property. On March

19, 1949, the circuit court commissioner rendered judgment of restitution and determined the full balance due of principal on one land contract of $14,-112.86 plus interest of $558.35 and the full balance due on the other contract of principal $3,916.89 plus interest of $155.80. It appears that the husband of defendant had been ill since January, 1949, and died on July 9, 1949, as a result of his illness.

On July 5, 1949, defendant filed affidavits for the purpose of securing delayed appeals. The affidavits alleged that she supposed the judgments before the circuit court commissioner would not exceed the sum of $300 in one case and $900 in the other and would have appealed the cases during the statutory period, but was prevented from appealing because of the severe illness of her husband; and that she relied upon her attorney to perfect appeals if the judgments were not in accordance with her just rights. The affidavits accompanied petitions for delayed appeal. On October 15, 1949, the trial court granted defendant's petitions for delayed appeal.

The cause came on for trial and on May 12, 1950, the trial court determined that there was nothing due on the 43-acre contract which was originally in the amount of $6,000; and that the sum of $1,451.83 was due as of May 6, 1950, on the 40-acre contract which was originally in the amount of $18,000.

Plaintiff appeals and urges that there was an abuse of discretion on the part of the trial court in allowing delayed appeal from the circuit court commissioner's court 105 days after entry of judgment therein because the grounds alleged in the affidavits of Clara Dickinson were not sufficient to justify the lower court in allowing a delayed appeal.

Appeals to the circuit court from a judgment of a circuit court commissioner are regulated by CL 1948, § 678.2a (Stat Ann 1949 Cum Supp § 27.3482 [1]). Appeals after the expiration of 5 days are governed

by CL 1948, § 678.8 (Stat Ann § 27.3488), which provides:

"Appeals may be authorized by the circuit court, or by the circuit judge in chambers, after the expiration of 5 days, when the party making the appeal has been prevented from taking the same by circumstances not under his control."

The law in Michigan involving the right to a delayed appeal from a judgment of the circuit court commissioner is well settled.

In *Selby* v. *Brading,* 218 Mich 667, we said:

"In the early case of *Draper* v. *Tooker,* 16 Mich 74, where this statute was under consideration, it was said by Mr. Justice Christiancy speaking for the Court:

"'It is quite clear that the statute did not intend to give a general discretion to the circuit court to allow appeals in any case after the 5 days, where, in their judgment, it would be equitable, or when the party had made a mistake, or drawn an erroneous inference; but that by the restrictive language used, the intention was to confine that discretion to the class of cases in which the appellant had been prevented from appealing within the 5 days by circumstances beyond his control. The discretion is, therefore, confined to cases falling within this class.'

"This Court has quite consistently followed the rule here announced. *Stanton* v. *Wayne Circuit Judge,* 126 Mich 715; *Stock* v. *Wayne Circuit Judge,* 143 Mich 339; *Graham* v. *Wayne Circuit Judge,* 143 Mich 360; *Goldhamer* v. *Wayne Circuit Judge,* 107 Mich 259; *Anderson* v. *Wartenberg,* 196 Mich 529; *Huddleston* v. *Charles Amos & Co.,* 180 Mich 253; *Combs* v. *Saginaw Circuit Judge,* 99 Mich 234; *Feldman* v. *Zimmerman,* 208 Mich 240.   *   *   *

"*Vincent* v. *Bowes,* 78 Mich 315, is cited to us as holding that the granting of such leave is discretionary. That case does so hold. It is the only case so holding which we have been able to find in the time

at our disposal. In so holding it is out of line with the other decisions of this Court. But the language there used was not necessary to decision and must be regarded as *obiter dictum* and not controlling.

"This statute has been recognized as affording relief to those parties who have been prevented from taking an appeal seasonably by circumstances not under their control. Thus serious illness of a member of a party's family furnishes grounds for bringing the statute in use (*Braastad* v. *Alexander H. Dey Iron Mining Co.*, 54 Mich 258); likewise reliance upon one's attorney (*Capwell* v. *Baxter*, 58 Mich 571); reliance upon a codefendant to perfect the appeal (*Potter* v. *Lapeer Circuit Judge*, 119 Mich 522); want of notice and absence from the State (*Jackson* v. *Jackson*, 135 Mich 549)."

In *Kowalsky* v. *Wayne Circuit Judge*, 221 Mich 457, we said:

"An appeal may be allowed upon a showing that one has been prevented from taking the same by circumstances not under his control. CL 1915, § 14408.* Severe sickness preventing an appeal has been recognized as a reason for allowing a belated appeal. *Bearse* v. *Aldrich*, 40 Mich 529; also severe sickness of a member of the family demanding constant attendance. *Braastad* v. *Alexander H. Dey Iron Mining Co.*, 54 Mich 258."

In *Capwell* v. *Baxter*, 58 Mich 571, we held that reliance upon an attorney who neglects to take an appeal is a circumstance beyond the control of the client within the meaning of the statute. See, also, *Meyers* v. *Wilson*, 319 Mich 80.

In defendant's affidavits in support of her motions to take delayed appeal we find the following:

"Deponent further says that had she known that judgment had been entered for the full balance purchase price of said lands she would have appealed

---

* CL 1948, § 678.8.—REPORTER.

but that she was prevented from ascertaining the status of said proceedings and prevented from appealing from said judgment by the severe illness of her husband, Forrest Dickinson; that said lands constitutes the home of herself and Forrest Dickinson, her husband; that her said husband has had a stroke and was on March 19, 1949, confined to his bed and was extremely ill and has been a constant care and worry since.

"That deponent relied upon her attorney to perfect an appeal if the said judgment was not in accord to her just rights but said attorney was honestly mistaken as to the provisions and terms and form of said land contract and honestly believed that said plaintiff had the right to take a judgment for the full balance purchase price when deponent was only in default to the extent to [of?] 6 monthly payments."

Under the circumstances in this case it was not error to grant defendant's motions for delayed appeal.

Plaintiff also urges that the trial court was in error in failing to allow the whole amount due on the land contracts. The land contracts in question contain the following:

"That if default is made by the purchaser in the payment of any tax assessment or insurance premium or in the delivery of any policy as above provided the seller may pay such tax assessment or premium or procure such insurance and pay the premiums therefor, and any sum or sums so paid shall be a further lien on the land payable by the purchaser to the seller forthwith with interest at 7% per annum and if proceedings are taken to enforce the contract in equity after the purchaser shall have been in default for a period of 30 * * * days or more, the entire amount owing hereon shall be due and payable forthwith, notwithstanding anything herein contained to the contrary and any sum paid by the seller incident to such proceedings or to

summary proceedings to recover possession, for mortgage tax upon this contract shall be a further lien upon the premises payable by the purchaser to the seller forthwith with interest at 7% per annum (provided if the addition of such tax shall make the interest reserved usurious, only so much thereof shall be paid by the purchaser as will require the payment of interest at a rate not in excess of 7% per annum).   *   *   *

"That the purchaser shall have possession of said lands from and after   *   *   *   the delivery hereof, while he shall not be in default on his part in carrying out the terms hereof, taking and holding such possession hereunder, and shall keep the premises in as good condition as they are at the date hereof and if purchaser shall fail to perform this contract or any part thereof the seller immediately after such default shall have the right to declare the same void and retain whatever may have been paid hereon and all improvements that may have been made upon the premises and consider and treat the purchaser as his tenant holding over without permission, and may take immediate possession of the premises and the purchaser and each and every other occupant remove and put out."

The only clause in the land contract referring to this matter is the so-called acceleration clause which provides that if default is made by the purchaser and if proceedings are taken to enforce the contract *in equity* then the entire amount shall become due. The parties to these contracts provided the condition under which the entire amount can be declared due. They are bound by the terms of the contract. The trial court was not in error in failing to declare the whole amount due on these land contracts.

Plaintiff also urges that the trial court erred in requiring plaintiff to credit on land contracts an unpaid note in the amount of $1,600. It appears that when the contract was entered into for the sale of

the 40-acre tract of land for $18,000, with a down payment of $3,000, the down payment was partly paid by a promissory note of $1,600.

The rule consistently followed in Michigan as to whether a note should be regarded as payment is stated in *People, for use of P. Koenig Coal Co.,* v. *Davis,* 237 Mich 165, where we said:

"Since *Gardner* v. *Gorham,* 1 Doug (Mich) 507, it has been the settled law of this State that the giving of a promissory note is not payment unless so understood by the parties, but if so understood and agreed by the parties, it is payment as a matter of law."

See, also, *Chase* v. *Gregory,* 274 Mich 32, and *In re Dunneback's Estate,* 302 Mich 73.

The contract shows that the note was accepted as part payment of the initial payment on the contract. Plaintiff, Charles A. Lent, testified:

"*Q.* Mr. Lent, I will hand you a paper marked 'exhibit B' and will ask you what that is?

"*A.* That is a note that Mrs. Dickinson gave me as part of the down payment.

"*Q.* Did you give her credit on the land contract?

"*A.* Yes.

"*Q.* But the note hasn't been paid?

"*A.* No, it has not been."

Plaintiff's admission that the note was accepted as part payment is sufficient to justify the trial court in holding that it was so accepted.

It is also urged that the trial court was in error in crediting as payments on the land contracts the amount due by Sam Wasyliw and wife to defendant. It appears that on October 13, 1947, defendant sold the 43-acre tract of land to Sam Wasyliw and wife on a land contract; and that since April, 1948, Sam Wasyliw and wife have been making their payments directly to plaintiff at the rate of $60 per month. In

determining the amount due from defendant, the trial court made the following finding of facts:

"That a second land contract between Clara Dickinson and Sam Wasyliw and Justyna Wasyliw, his wife, date October 13, 1947, covering a portion of the lands in said complaint described was taken over by plaintiff and appellee, Charles A. Lent, and he has been receiving payments of $60 per month thereon since August, 1948, and that the balance due thereon as of May 6, 1950, is $5,055.62.

"3. That the defendant and appellant Clara Dickinson should be given credit on the original contract for such portion of said sum of $5,055.62 plus the monthly payments in the amount of $1,140 as has not been applied upon the contract involved in the suit consolidated and tried with this case to-wit the sum of $1,487.36.

"4. That no payments have been made on said land contract since September 15, 1948, so that there is now due on said contract 19 monthly payments of $150 each making a total of $2,850 due as of May 6, 1950.

"5. That applying the credit above set forth of $1,487.36 against the said sum of $2,850, the court finds that there is due on said land contract in monthly payments the sum of $1,362.64.

"6. That the plaintiff and appellee paid taxes in the amount of $89.19 on said lands.

"7. That the defendant and appellant is guilty as alleged in said complaint and that the annual rental value is $500.

"The total amount determined to be due under said contract is the sum of $1,362.64 as of May 6, 1950, together with sum of $89.19 paid on taxes or a total of $1,451.83.

"IT IS THEREFORE ORDERED AND ADJUDGED that said plaintiff and appellee Charles A. Lent, have restitution of the premises described in said complaint after 90 days from May 6, 1950, unless said sum of $1,451.83 be paid on or before said period of time."

Defendant urges that she and plaintiff entered into an agreement whereby plaintiff was to take over the Wasyliw contract and allow defendant credit for the amount due on said contract.

Defendant testified:

"It was prior to the first collection by Mr. Lent on the Wasyliw contract, may be 2 or 3 weeks before. My conversation with Mr. Lent was 2 or 3 weeks prior to April of 1948. It took place at his home on Martindale in Detroit. * * * Mr. Lent did not see the contract so far as I know at that time, but I told him exactly what it was, and he asked me to get it surveyed so that we could properly describe the property sold to the Wasyliws. He would then take over the contract and apply the entire amount so owing him on my other contracts. * * * I brought the contracts up to date in April in 1948."

Defendant also testified that she received a letter from plaintiff a copy of which reads as follows:

"April 13, 1948.

*"Dear Mrs. Dickinson:*

"Thanks for the payments. Now you can get the land surveyed so we can have the legal description of both properties north and south of M–59. We will take over Mr. Wasyliw's contract. I think we should have a new contract on both properties so Mrs. Lent's name will be on same. I prefer to have this deal closed in Mr. Smith's office in Howell. Just let me know when you are ready and I will meet you there any time. Thanks again.

"CHARLES A. LENT."

Plaintiff testified:

"I do not know what is the principal balance due on the Wasyliw contract. I have never seen the contract. * * * The money on that contract has been paid directly to me. * * * I have accepted $900 on the Wasyliw contract since September 15, 1948. I don't known how much I accepted before that time.

* * * I have been accepting payments since that time on this contract. As of January 15, 1949 there was still $5,376.69 due on the Wasyliw contract."

Sam Wasyliw testified:

"Then Mr. Lent came to see me. Nobody was present except the 2 of us. Oh, he told me, 'Mr. Wasyliw, I got that place closed. Don't worry, you can go to sleep. I can protect you good, not protect her. Don't worry anymore.' That is all about that.

"He told me to make the payments to him. My attorney looked the contract over and the contract said 'in fine print if anything goes wrong I could write right straight to the owner. He told me to make the payments to him and he would protect me. I have continued to make the payments directly to him."

Defendant testified:

"I have not made any collections whatever on the Wasyliw contract. As far as I know Mr. Lent has had complete charge of the contract since the agreement and has made the collections. I am willing to transfer this contract to Mr. Lent. I have signed such papers and they have been offered in court. I am willing to sign a new contract with the Lents name on it for the property south of M–59 after delivering copy of survey to Mr. Berriman. The property covered by the Wasyliw contract is north of M–59. I have exercised no control of the Wasyliw contract since April of 1948."

It also appears that defendant made out a quitclaim deed and assignment of the contract to plaintiff and the same was offered to plaintiff in court. In the case at bar, defendant having disclaimed any title or interest in the proceeds of the so-called Wasyliw contract and plaintiff having promised to take over such contract and having accepted payments from Wasyliw, it will be considered that the rights of defendant in and to such contract have been

equitably assigned to plaintiff. We also hold that there is competent evidence to support the finding of fact made by the trial court of the amount of credit to be allowed defendant by reason of her payments made on both contracts and the equitable assignment of the Wasyliw contract to plaintiff.

The judgment is affirmed, with costs to defendant. However, defendant may have 60 days from the date of affirmance of judgment to comply with its terms.

BOYLES, CARR, and BUSHNELL, JJ., concurred with SHARPE, J.

BUTZEL, J. *(for reversal)*. It appears from the record that this petition for a delayed appeal is a result of neglect or afterthought, and that Clara Dickinson was at all times apprised of the action which had been taken against her and could have protected her rights by a prompt appeal as provided by law. Under the circumstances, the trial court abused its discretion, as the application for delayed appeal should have been dismissed. *Draper* v. *Tooker,* 16 Mich 74; *Selby* v. *Brading,* 218 Mich 667, and cases cited therein.

A short chronological statement of the facts will be helpful. On September 15, 1948, Clara Dickinson, as vendee, defaulted on 2 land contracts held by Charles A. Lent, vendor. On December 7, 1948, a letter was sent to her at her business address, informing her that if she did not bring the contract up to date the whole amount would be declared due, and foreclosure proceedings would be instituted. A similar letter was sent to her home on December 17, 1948. In January of 1949, Mr. Dickinson, Clara's husband, became seriously ill, and it appears that he required much attention from Mrs. Dickinson until July 11, 1949, when he died. On January 24, 1949, the con-

tracts were declared forfeited. Proceedings were begun before the circuit court commissioner on February 15, 1949, and service was had on the 21st of that month. The cause was set for hearing on March 5th, but the attorneys for the parties stipulated that it be continued until March 19th. On March 18th, the day preceding the hearing, Clara Dickinson appeared at the office of plaintiff's attorney in connection with a survey of the Wasyliw property. At that time she was informed that a judgment for the full amount of the contract would be taken the next day. On March 19th, Clara Dickinson was not personally present at the hearing, but appeared through her attorney when judgment was taken for the full amount due. On July 5, 103 days after the time to appeal had expired, the instant proceeding was begun.

In her affidavit, Clara Dickinson listed 3 reasons why her application for leave to take a delayed appeal should be granted.

(1) She claimed that she supposed that judgment would only be taken for the amount that she was in default and not for the entire amount of the contract. The testimony shows that Mrs. Dickinson learned in her conversation on the day immediately preceding the hearing that the plaintiff intended to take judgment for the entire amount. In this connection it might be added that Mrs. Dickinson is not the classic "poor widow" type, uninformed as to her rights, and easy prey for every unscrupulous passerby. She is a woman of considerable astuteness. She was familiar with proceedings before the circuit court commissioner as there had already been 2 prior actions by the present plaintiff to compel payments on the contracts in question. She had been a real estate broker and it appears that she handled her husband's business affairs even prior to his illness.

Moreover, even if she were not actually informed of the outcome of the case the excuse would not be legally sufficient. She had knowledge of the date of the hearing and was represented at the hearing by an attorney. Either of these would be sufficient to charge her with notice of what transpired at the hearing. *Anderson* v. *Wartenberg,* 196 Mich 529; *Huddleston* v. *Charles Amos & Co.,* 180 Mich 253; *Draper* v. *Tooker, supra.* To hold otherwise would be to allow every litigant whose presence was not deemed necessary or convenient at the trial to take a delayed appeal, and this would be an unwarranted circumvention of the statute.

(2) She further claims that she was prevented from taking the appeal because of the sickness of her husband. In *Kowalsky* v. *Wayne Circuit Judge,* 221 Mich 457, Judge Wiest, speaking for the Court, said that sickness in and of itself was not a sufficient circumstance beyond the control of the litigant to warrant a delayed appeal. The applicant must show that the sickness incapacitated him from attending to his affairs. The earlier cases involving sickness, *Bearse* v. *Aldrich,* 40 Mich 529; and *Braastad* v. *Alexander H. Dey Iron Mining Co.,* 54 Mich 258; are not in conflict with this decision.

Mrs. Dickinson, after her husband's illness began, found time to arrange for a survey of the Wasyliw property, to appear at the office of Lent's attorney, and later to substitute attorneys and institute the present proceedings. While her presence was often required at her husband's side, we do not believe it was a sufficient burden to excuse the long delay.

(3) She further claims that she relied upon her attorney to take an appeal if the judgment was not in accord with her just rights, but that her attorney was honestly mistaken as to the provisions of the land contract and believed that plaintiff had a right to take judgment for the entire amount. This con-

tention is not valid.   There was no mistake here. The attorney did not take an appeal because he thought that Mrs. Dickinson did not want to further contest the matter.   This is not a case of attorney's negligence as was presented in *Meyers* v. *Wilson,* 319 Mich 80, where the attorney attempted to perfect an appeal but omitted necessary steps, or as in *Frank* v. *Union Trust Co.,* 239 Mich 646 (affirmed by an equally divided court), where the attorney negligently allowed the matter to go by default.   Nor is it a case of honest mistake as in *Capwell* v. *Baxter,* 58 Mich 571, where the attorney was honestly mistaken as to the date of trial and allowed the opposing party to take a default judgment and the appeal period to lapse. . See contra:   *Denver & Rio Grande Western R. Co.* v. *Wayne Circuit Judge,* 227 Mich 589; *Draper* v. *Tooker, supra.*   In this regard we are impressed with the statement of Justice NELSON SHARPE in *Frank* v. *Union Trust Co., supra,* at page 653:

. "To hold that under the showing made in the petition and affidavits this defendant was prevented from taking an appeal 'by circumstances not under his control' is, in my opinion, equivalent to saying that the statute does not mean what it says.  If so interpreted, any person seeking an appeal under it may simply say, 'I left it to my attorney to decide and he neglected to take an appeal.'  And the attorney may well say, 'I need give it no attention.  The court will· grant a delayed appeal as my client is not chargeable with my neglect.' "

Moreover, Mrs. Dickinson waited 108 days before attempting to perfect her appeal.   A delay which is excusable after the passage of a few days may become inexcusable after several months have passed. *Pickell* v. *Coates,* 147 Mich 53.   In the *Pickell Case,* we said:

"The statute (CL 1897, § 909) relieving parties who have been prevented from taking appeals by circumstances not within their control, should be considered a remedial statute, and while it should have a reasonable construction no construction should be adopted which does not take account of the evident intention of the legislature to require prompt action by the defeated party, if he would appeal."

While we have at times been inclined to grant a delayed appeal when there are good reasons given or the delay is a short one, we believe that under the circumstances of this case it was an abuse of discretion to allow the appeal from the judgment of restitution 108 days after rendition of the judgment.

The order allowing the delayed appeal should be reversed and the case remanded to the circuit court with directions to enter an order dismissing the appeal from the judgment of the circuit court commissioner. Costs to appellant.

REID, C. J., and NORTH and DETHMERS, JJ., concurred with BUTZEL, J.